## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Kerry Rogers (Y27318), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 20 C 50441 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Correctional Officer Dennis Harden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

It is the Court's Report and Recommendation that Defendants' request for dismissal of the complaint for failure to exhaust administrative remedies be granted. Any objection to this Report and Recommendation must be filed by June 1, 2023. Failure to object may result in a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## BACKGROUND

Kerry Rogers ("Plaintiff"), an Illinois state prisoner, brought this civil rights action pursuant to 42 U.S.C. § 1983 against Warden Sonja Nicklaus, Correctional Officer Dennis Harden, Correctional Office Jamin Soria, and Lieutenant Clark individually and in their official capacities as employees of the Illinois Department of Corrections ("IDOC").[1] [19]. In his Amended Complaint, Plaintiff alleges that during his imprisonment at Dixon Correctional Center ("Dixon"), Defendants violated his constitutional rights by failing to protect Plaintiff from self-injury in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. [*Id.*].

Plaintiff contends that after he disclosed self-injury ideation and requested assistance from IDOC staff, IDOC staff not only failed to provide him appropriate assistance but encouraged him to commit suicide and provided him with a weapon. Plaintiff specifically alleges that on July 12, 2020, he was denied an opportunity to speak with a mental health counselor, he was returned to his cell where he was encouraged by multiple IDOC employees to commit suicide, not prevented from covering his cell window, and provided by Defendant Soria with a razor so that Plaintiff could harm himself. [*Id.*, at ¶¶ 15-24]. In separate incidents on July 12 and 13, Plaintiff harmed himself with a razor. [*Id.*, at ¶¶ 25-28].

In their answers to Plaintiff's Amended Complaint, Defendants assert among other affirmative defenses that Plaintiff failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [47], [54]. On May 12, 2023, the Court held a *Pavey* hearing to address this defense. *See Pavey v. Conley*, 544 F.3d 739, 742

---

[1] Plaintiff's claim against Defendant Harden was dismissed on March 17, 2022. [64]. Defendant Nicklaus has retired from the IDOC, but remains a named defendant in this case.

(7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 591 (7th Cir. 2015) (explaining that courts should hold a *Pavey* hearing to "resolve disputed factual questions that bear on exhaustion"). Plaintiff and Ryan Kilduff, a member of the Administrative Review Board ("ARB"), appeared and testified.

## LEGAL STANDARD

The PLRA requires inmates to exhaust available administrative remedies before filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies and thus "is foreclosed by § 1997e(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

To exhaust administrative remedies, an inmate must proceed through all steps of the institution's grievance process available to him properly so that the institution can address his grievance on its merits. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citing *Pozo*, 286 F.3d at 1024). Since failure to exhaust administrative remedies is an affirmative defense, "Defendants bear the burden of proving 'that an administrative remedy was available and that [Plaintiff] failed to pursue it.'" *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) (quoting *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015)). Defendants must prove both of these elements by a preponderance of the evidence. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases).

IDOC grievance procedures require an inmate to file his grievances with a counselor "within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." Ill. Admin. Code tit. 20, § 504.810(a). If the grievance cannot be resolved at this first level, then the grievance should be sent to a grievance officer "within 60 days after discovery of the problem, unless the inmate can 'demonstrate that [it] was not timely filed for good cause.'" *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citing Ill. Admin. Code tit. 20, § 504.820(a)). The grievance officer then reviews the grievance and provides a written response. Ill. Admin. Code tit. 20, § 504.830(a). The Chief Administrative Officer ("CAO") then reviews the findings and recommendations of the grievance officer and advises the inmate of his or her decision. Ill. Admin. Code tit. 20, § 504.830(e). If the inmate is not satisfied with the CAO's response, he can appeal to the IDOC Director through the ARB within 30 days. Ill. Admin. Code tit. 20, § 504.850(a). Once the ARB submits the written report of its findings and recommendations, the IDOC Director reviews those findings and recommendations and makes a final determination as to the grievance. Ill. Admin. Code tit. 20, § 504.850(d)-(e). With this final determination at the ARB level, the inmate has exhausted his administrative remedies. *See* 20 Ill. Admin. Code § 504.850(e).

In lieu of submitting the grievance to the counselor at the first level, an inmate may request that a grievance be expedited as an emergency by sending his grievance directly to the CAO. Ill. Admin. Code tit. 20, § 504.840. The CAO should address a grievance on an emergency basis if "there is a substantial risk of imminent personal injury or other serious or irreparable harm." Ill. Admin. Code tit. 20, § 504.840(a). If the CAO determines that this standard is not met, the CAO

will deny the inmate's request to treat the grievance as an emergency and notify the inmate in writing that he must proceed with the standard grievance process. Ill. Admin. Code tit. 20, § 504.840(c). Once this notice is received, it is the inmate's responsibility to submit the grievance to a counselor at the first level and subsequently follow the standard grievance procedure.

## DISCUSSION

On July 20, 2020, Plaintiff submitted an emergency grievance to the CAO. [96, at p. 15]. The CAO determined on July 23 that the grievance was not an emergency. [*Id*.]. Plaintiff appealed this determination that his grievance was not an emergency to the ARB. After receiving this appeal on July 30, the ARB instructed Plaintiff to submit his grievance through the standard procedure on August 18. [*Id*., at p. 14]. On September 4, Plaintiff submitted the grievance to a counselor at the first level. [94, at p. 7]. On September 11, the counselor determined that Plaintiff's claims were not substantiated and returned the grievance to Plaintiff. [*Id*.]. Plaintiff did not then submit this grievance to a grievance officer.

On October 20, 2020,[2] Plaintiff submitted a new grievance to a counselor at the first level requesting reconsideration of the CAO's determination that his July grievance did not constitute an emergency. [101, at pp. 43–44]. Plaintiff stated that his self-injurious behavior also occurred while he was on crisis watch without noting a specific time frame for this stint on crisis watch. [*Id*.]. The counselor's response, dated October 21, stated that inmates are not permitted to "grieve a grievance response, but can appeal the response in accordance with DR504." [*Id*.]. After receiving this response, Plaintiff did not appeal this October grievance or his July grievance to a grievance officer. Plaintiff then filed this lawsuit on November 12, 2020.

Defendants argue that Plaintiff failed to exhaust his available administrative remedies since he failed to submit his July grievance to a grievance officer after the counselor determined it to be unsubstantiated. Plaintiff does not dispute his failure to submit the grievance to the grievance officer for second level review, but contends that he followed the grievance procedure to the best of his knowledge and ability. Plaintiff notes that he suffers from mental illness. He testified that for some portion of the time afforded to him to appeal his grievance, he was placed on crisis watch and denied access to materials necessary to conduct an appeal.

At the *Pavey* hearing, Ryan Kilduff from the ARB testified that there are situations in which an inmate may not be able to appeal a grievance, such as when an inmate is placed on crisis watch because of a perceived risk that he may attempt suicide. Kilduff explained that while on crisis watch an inmate may be denied a writing utensil due to concerns that he may use it for self-harm.

However, while the Court has no reason to doubt that Plaintiff was on crisis watch for some duration of time during September and/or October 2020, this time on crisis watch does not explain his failure to ever appeal the counselor's response to a grievance officer. Plaintiff testified that he was placed on crisis watch after the incidents described in his complaint, that he was frequently placed on crisis watch, and that he was on crisis watch for some period of time between submitting his grievance for first level review on September 4 and submitting a new grievance on October 20,

---

[2] While this grievance is stamped as received on October 19, 2020, Plaintiff dated the grievance October 20, 2020. [101]. The exact date this second grievance was filed has had no effect on the Court's decision.

2020. He did not specify when he entered crisis watch or how long he remained on crisis watch during this period. Nor did Plaintiff contend in his pre-*Pavey* statement [91] or in his testimony that he failed to submit to a grievance counselor because he believed that his submission was time-barred or even to what he believed the applicable deadline to be.

Weeks before submitting his October grievance, Plaintiff began preparing a civil complaint regarding the allegations contained in the July grievance. While Plaintiff's initial complaint was not filed with the Court until November 12, 2020, the initial complaint's certification signed by Plaintiff was dated September 24, 2020. [1, at p. 8]. In the section of the complaint form concerned with exhaustion of administrative remedies, Plaintiff wrote that he filed an emergency grievance and that once the CAO determined the grievance did not constitute an emergency, he appealed the grievance to the ARB. [*Id*., at p. 3]. Plaintiff further wrote "I was told by ARB to follow grievance procedure, the grievance matter wasn't resolve[d]." *Id*.[3] While Plaintiff testified that he did receive help from another inmate in preparing his civil complaint, the certification dated September 24 indicates that on that date Plaintiff had access to the materials necessary to appeal his grievance to the grievance officer.

Evidence of Plaintiff's other grievances establishes that Plaintiff was no stranger to IDOC grievance procedures. Before submitting the July grievance, Plaintiff submitted a grievance dated February 12, 2020 at Hill Correctional Center regarding an incident that allegedly occurred on January 24, 2020, [96, at pp. 3–8], and a grievance dated May 27, 2020 at Dixon regarding an incident that allegedly occurred at on May 15, 2020. [*Id*., at pp. 9–13]. These grievances similarly allege that correctional officers failed to protect him from self-harm. Both appear to have been timely submitted and re-submitted in accordance with the grievance procedure until Plaintiff's available administrative remedies were exhausted by a final determination of the ARB. On February 16, 2021, the ARB denied the May 27 grievance as unsubstantiated and remanded the February 12 grievance to the Warden of Hill Correctional Center for investigation. [*Id*., at pp. 5, 9]. Upon review of the Warden's findings that the grievance was not substantiated, the ARB denied the February 12 grievance. [*Id*., at p. 3]. Plaintiff's advancement of these grievances through each step to ARB determinations on their merits suggests he also possessed sufficient knowledge of IDOC grievance procedures to follow them in respect to the July grievance at issue here.

The evidence demonstrates that Plaintiff did have the opportunity to appeal his July grievance to a grievance officer and that he was knowledgeable of IDOC grievance procedures. The Court finds by a preponderance of the evidence that the IDOC grievance procedure was available to Plaintiff and that he did not fully pursue this available administrative remedy.

---

[3] On November 12, 2020, Plaintiff also filed on the docket a handwritten letter dated September 24, 2020. [5]. This letter both describes the alleged incidents of self-harm and the ARB's refusal to treat his grievance as an emergency. [*Id*.]. After these statements, Plaintiff adds in what appears to be a different tone of ink that he submitted a grievance seeking to grieve the denial of emergency status to his previous grievance. [*Id*.]. As the mention of the second grievance suggests that it was at least modified after October 20 and testimony about its drafting was not developed at the *Pavey* hearing, the Court has not considered the date of this letter in its analysis.

**CONCLUSION**

For the foregoing reasons, it is the Court's Report and Recommendation that Defendants' request for dismissal of the complaint for failure to exhaust administrative remedies be granted. Any objection to this Report and Recommendation must be filed by June 1, 2023. Failure to object may result in a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Date: May 18, 2023                     ENTER:

United States Magistrate Judge

5